UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

                                                                              **ORDER**
                                                                              19-CR-197 (MKB)

              - against -

ANTON BOGDANOV,

                            Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       On February 11, 2020, Defendant Anton Bogdanov pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of unauthorized computer intrusions in violation of 18 U.S.C. § 1030(a)(2)(C), (c)(2)(B). (Min. Entry, Docket Entry No. 23; *see also* Indictment ¶¶ 6–7, 10–11, Docket Entry No. 12.) On May 19, 2021, the Court sentenced Bogdanov to sixty months' imprisonment and one year of supervised release on each count, both to run concurrently. (J. 2–3, Docket Entry No. 42.) On July 9, 2021, Bogdanov, proceeding *pro se*, filed a motion for compassionate release seeking a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that underlying medical conditions place him at heightened risk of contracting COVID-19 in custody at the Metropolitan Detention Center in Brooklyn, New York ("MDC"). (Def.'s Mot. to Reduce Sentence ("Def.'s Mot.") 2, Docket Entry No. 49.)[1] The Government opposes Bogdanov's motion. (Gov't Mem. in Opp'n to Def.'s Mot. ("Gov't Opp'n") 1, Docket Entry No. 53.)

       For the reasons discussed below, the Court denies Bogdanov's motion.

---

[1] Because Bogdanov's motion is not consecutively paginated, the Court refers to the page numbers assigned by the electronic filing system.

## I. Background

### a. Guilty plea and sentencing

In June of 2014, Bogdanov met a co-conspirator ("CC") who advertised personal identifying information ("PII") for sale in an online chat forum, including for the purpose of filing fraudulent tax refunds. (Def.'s Sentencing Mem. 15, Docket Entry No. 31.) Bogdanov learned how to apply for fraudulent tax refunds from the forum, (*id.*), and, on June 25, 2014, Bogdanov contacted CC asking if CC could access prepaid debit cards that could receive direct deposits from the Internal Revenue Service ("IRS"), informing CC that he could use the cards to file for hundreds of thousands of dollars in business tax refunds, (Presentence Investigation Report ("PSR") ¶ 7, Docket Entry No. 27). About one month later, Bogdanov began buying "account and routing numbers" for the cards from CC. (Def.'s Sentencing Mem. 15; *see* PSR ¶ 8.) CC informed Bogdanov that CC could supply account information for additional cards if Bogdanov could provide the PII necessary to apply for the cards. (*See* PSR ¶ 8.) CC also asked Bogdanov to teach CC how to apply for tax refunds using the same method, which Bogdanov did. (*Id.* ¶ 9.) Between September of 2014 and January of 2016, Bogdanov continued to send stolen PII to CC, which CC used to open prepaid debit cards. (*Id.* ¶ 11; *see id.* ¶ 5.) After obtaining the cards, CC would send the card information to Bogdanov for use in fraudulent tax filings. (*Id.* ¶ 11.) "Approved tax refunds were thereafter deposited onto the prepaid debit cards," whereupon CC would instruct another co-conspirator to cash out the cards. (*Id.*) "[T]he monetary loss to the United States Department of the Treasury from this scheme totals $1,939,156. (*Id.* ¶ 17.)

In addition, through CC, Bogdanov purchased remote desktop protocol access to the computer networks of three tax preparation firms, which allowed him to connect remotely to the

firms' computer systems "using stolen credentials of an authorized user." (*Id.* ¶ 12; Def.'s Sentencing Mem. 15.) Once connected, Bogdanov "electronically changed the tax filings of the firm's clients so that the account and routing numbers listed in the filings (and to which refunds were to be paid) were those of the prepaid debit cards he acquired." (PSR ¶ 12.)

On November 28, 2018, Bogdanov was arrested in Phuket, Thailand, pursuant to a provisional arrest warrant, and, on March 29, 2019, he was extradited to the United States. (*Id.* ¶ 16.) On April 29, 2019, a grand jury indicted Bogdanov. (Indictment.) On February 11, 2020, Bogdanov pled guilty to one count of conspiracy to commit wire fraud and one count of unauthorized computer intrusions in violation of 18 U.S.C. §§ 1349 and 1030(a)(2)(c), (c)(2)(B), respectively. (Min. Entry; *see also* Indictment ¶¶ 6–7, 10–11.) On May 19, 2021, the Court sentenced Bogdanov to a term of sixty months' imprisonment to run concurrently and one year of supervisory release to run concurrently and entered a forfeiture money judgment in the amount of $476,713.[2] (J. 2–3, 5.) Bogdanov is currently serving his term at the MDC.

    **b. Compassionate release application**

Bogdanov seeks a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that extraordinary and compelling circumstances exist for his release because he "suffer[s] from several underlying medical conditions that place [him] at enhanced risk for contraction of the disease, and more severe reaction if contracted," including chronic skin problems in the form of "many open skin wounds that bleed daily," are "all over the body," and allow COVID-19 to "easily get directly into the bloodstream"; a weakened immune system

---

    [2] The Court deferred ruling on the amount of restitution, which was disputed, (Sentencing Tr. 7:13–8:19, 21:22–22:24), and scheduled a restitution hearing, (Min. Entry dated May 19, 2021). The parties have since informed the Court that they "will be able to reach an agreed restitution amount without the need for a hearing." (Mot. for Extension to File Joint Proposed Restitution Agreement 1, Docket Entry No. 58.)

due to his daily use of antibiotics for several years; and chronic rhinitis, which gives him a "running nose and cough" and diminishes his ability to smell, making it "impossible to diagnose COVID-19 infection in time." (Def.'s Mot. 2–3.) In support, Bogdanov argues that "the situation is even starker" given "the inherent problem of COVID-19 mitigation in correctional facilities," where overcrowding makes social distancing "not possible" and health services are understaffed. (*Id.* at 3–4.) In addition, Bogdanov argues that the section 3553(a) factors support his release because he has completed over half of his sentence, during which time he has "made significant strides in both [his] development as a person and in fulfilling the aim of rehabilitation," as evidenced by his "exemplary disciplinary records" and his case manager's submission of a request that he be transferred to a minimum-security facility.[3] (*Id.* at 5.) If granted release, Bogdanov plans to reside with family, obtain health insurance, start working, volunteer with his children's activities, and attend courses to improve his skills. (*Id.* at 6.)

The Government argues that Bogdanov, who is thirty-five years old, has failed to demonstrate extraordinary and compelling reasons for his release because he has provided "no evidence that he has known health conditions which would make him more vulnerable than other inmates" but rather made a "blanket generalization that individuals with skin conditions, chronic

---

[3] Bogdanov also suggests that his sentence is greater than necessary to comply with the sentencing goals because it is inconsistent with the sentences of others whose tax refund fraud schemes had higher intended losses. (*See* Def.'s Mot. 5 (first citing *United States v. Hernandez*, No. 13-CR-154-01, 2014 WL 6888758, at *6–7 (S.D.N.Y. Dec. 5, 2014) (sentencing the defendant to twenty-four months' imprisonment where intended loss was between $400,000 and $1,000,000); then citing *Sanchez v. United States*, No. 14-CR-209, 2019 WL 125949, at *2–3 (S.D.N.Y. Jan. 8, 2019) (involving a defendant sentenced to thirty-two months' imprisonment who "obtained $1 million plus in fraudulent refunds"); then citing *United States v. Garcia*, No. 10-CR-249-01, 2014 U.S. Dist. LEXIS 36415, at *10, *17–18 (S.D.N.Y. Mar. 18, 2014) (sentencing the defendant to unspecified time served for fraudulently receiving "at least $2 million" in federal and New York State refund checks); and then citing *United States v. Bueno*, No. 09-CR-625, 2010 WL 2228570, at *1–2 (S.D.N.Y. June 3, 2010) (sentencing the defendant to twenty-four months' imprisonment for loss of $18 million)).)

rhinitis[,] and who take antibiotics may be more vulnerable due to the potential effects those conditions have on the . . . immune system." (Gov't Opp'n 6.) In addition, the Government argues that the section 3553(a) factors do not support release because Bogdanov's conduct was "gravely serious," his sentence ensures both specific and general deterrence, and the Court "considered all of the issues" raised in his motion during sentencing, including each of the medical issues and the conditions of his custody, and nothing has changed since sentencing. (*Id.* at 7.)

**II. Discussion**

The Court finds that a reduction of Bogdanov's sentence is inconsistent with the section 3553(a) factors.

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Pursuant to section 3582(c)(1)(A)(i), "a district court 'may reduce' the term of a defendant's imprisonment 'if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'" *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Cummings*, --- F. App'x ---, ---, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021) (same); *United States v. DiBiase*, 857 F. App'x 688, 688 (2d Cir. 2021) (same); *United States v. Fernandez*, 853 F. App'x 730, 731–32 (2d Cir. 2021) (same).

Under section 3582(c), and as relevant here, courts may modify a previously imposed sentence where:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

5

> may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —
>
> (i)      extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)     the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii). Thus, even if a district court decides that a movant has shown extraordinary and compelling reasons for compassionate release, the court must also consider whether the factors set forth in 18 U.S.C. § 3553 support release. *See United States v. Souza*, --- F. App'x ---, ---, 2021 WL 3871262, at *2 (2d Cir. Aug. 31, 2021) (affirming district court's ruling that "even if [defendant]'s medical conditions demonstrated extraordinary and compelling reasons for release, 'the factors set forth in [section 3553] militate toward continued confinement'" (quoting *United States v. Bolino*, No. 06-CR-806, 2020 WL 4749807, at *2 (E.D.N.Y. Aug. 17, 2020))); *United States v. Butler*, 845 F. App'x 74, 77 (2d Cir. 2021) ("[T]he district court acted well within its discretion in concluding that, even if extraordinary and compelling circumstances existed for his release, [the petitioner's] compassionate release motion should be denied because his release was not consistent with the [s]ection 3553(a) factors in this case."); *Roney*, 833 F. App'x at 853 ("We need not decide whether [the appellant] has proffered an extraordinary and compelling reason that warrants his release . . . because, even assuming

6

*arguendo* that he has, we discern no abuse of discretion in the district court's conclusion that release is nevertheless unwarranted upon consideration of the [section] 3553(a) factors.").

Although the Court takes seriously the threat posed by the pandemic to incarcerated individuals and the heightened risk of complications faced by individuals who suffer from underlying medical conditions, the Court finds that the requested relief is inconsistent with the section 3553(a) factors. Even assuming Bogdanov has shown extraordinary and compelling circumstances warranting release, as the Government argues, his conduct was "gravely serious," involving active participation in multiple schemes across multiple years that helped generate nearly two million dollars in losses, "had serious ramifications for the U.S. Department of Treasury and the American public," and removed "any confidence that accounting firms and their clients had in the security of their PII and tax refunds." (Gov't Opp'n 7.) In addition, the Court's sixty-month sentence departed downward from the U.S. Sentencing Guidelines' range of ninety-seven to 121 months. (PSR ¶ 80.) Moreover, Bogdanov has served only approximately thirty-seven months of that sentence, and a further reduction would not adequately "reflect the seriousness of the offense, . . . promote respect for the law, [or] . . . provide[] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).[4]

---

[4] After filing this motion, Bogdanov filed a letter stating that he became aware that "several [j]udges in the Southern and Eastern Districts of New York have given some criminal defendants hardship time credits for time served during the COVID-19 pandemic." (Letter dated Aug. 1, 2021, Docket Entry No. 56.) Based on this, he requests that "the Court issue an amended judgment inclusive of time credits for the time [he has] served during the pandemic." (*Id.*) Bogdanov has not cited any cases in which courts have given such credits, and the Court cannot find any. Accordingly, the Court denies his request for time credits without prejudice.

7

### III. Conclusion

Accordingly, for the reasons explained above, the Court denies Bogdanov's motion for compassionate release.

Dated: November 2, 2021
      Brooklyn, New York

                                      SO ORDERED:

                                      s/ MKB

                                      MARGO K. BRODIE
                                      United States District Judge